MOSK, J.
I concur in the judgment.
I concede that the result that the majority opinion reaches is sound under the law.
*225 But I cannot resist expressing my reservations about the morality of the conduct by the police.
It is a primary function of a law enforcement agency not only to investigate the commission of crimes but also to prevent their commission in the first place, certainly not to encourage them. Members of the public are persuaded to lock their motor vehicles and to remove the keys therefrom. The police acted to the contrary here and thus deliberately encouraged commission of a crime. The defendant, so motivated, accommodated them.
If leaving the keys in an open motor vehicle is sound law enforcement, then next we may anticipate arranging for a homeowner to leave his front door open all night to attract a burglar. Or a bank to leave a signed check on the counter to attract a forger. Or leaving a loaded gun on a park bench to attract a potential robber. Police may thus apprehend more criminals. But there will be more crimes.
In a strange rebuttal, the majority opinion refers to the police “risking their own property.” (Maj. opn., ante, at p. 224.) The fact, of course, is that police possess and use public property and must act with that in mind.
My preference is for law enforcement agencies to take steps to make the commission of crimes impossible, or at least more difficult, rather than simpler. Admittedly there are potential criminals in our midst, and weak-willed persons who will take advantage of criminal opportunity. I would prefer discouraging them rather than devising techniques to make their task easier.[1]

This concern is not new. Over three decades ago Karl Menninger declared that police are “caught in an obsolete, ineffective, crime-breeding—rather than crime-preventing—system . . . .” (Menninger, The Crime of Punishment (1968) p. 34.)